**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------
SHIVA STEIN,                                    :
                                                :
            Plaintiff,                          :   Civil Action No. _____
                                                :
v.                                              :
                                                :   COMPLAINT FOR VIOLATIONS OF
CINCINNATI BELL INC., LYNN A.                   :   SECTIONS 14(a) AND 20(a) OF THE
WENTWORTH, MEREDITH J. CHING,                   :   SECURITIES EXCHANGE ACT OF
WALTER A. DODS, JR., JOHN W. ECK,               :   1934
LEIGH R. FOX, JAKKI L. HAUSSLER,                :
CRAIG F. MAIER, RUSSEL P. MAYER,                :   JURY TRIAL DEMANDED
THEODORE H. TORBECK, and MARTIN J.              :
YUDKOVITZ,                                      :
                                                :
            Defendants.                         :
-----------------------------------------------------------
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Cincinnati Bell International Inc. ("Cincinnati Bell or the "Company") and the members Cincinnati Bell board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Cincinnati Bell by affiliates of Brookfield Infrastructure, the flagship listed infrastructure company of Brookfield Asset Management ("Brookfield").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on February 4, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Charlie Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Charlie AcquireCo Inc. (an affiliate of the Brookfield), will merge with and into Cincinnati Bell with Cincinnati Bell surviving the merger and becoming a wholly owned subsidiary of Charlie AcquireCo Inc. (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Cincinnati Bell common share issued and outstanding will be converted into the right to receive $10.50 (the "Merger Consideration").

3.      As discussed below, Defendants have asked Cincinnati Bell stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") and Moelis & Company LLC ("Moelis") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cincinnati Bell stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or

transact business in this District. Indeed, Cincinnati's common stock trades on the New York Stock Exchange, which is headquartered in this District. *See, e.g., United States v. Svoboda,* 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Moreover, both financial advisors have headquarters located in this District. Innisfree M&A Incorporated, the Company's proxy solicitation agent in connection with the Proposed Transaction, is located in this District at 501 Madison Avenue, New York, New York 10022. In addition, Cravath, Swaine & Moore, Cincinnati Bell's legal advisor for the Proposed Transaction, is located in this District at Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Cincinnati Bell common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Lynn A. Wentworth has served as a member of the Board since 2008 and is the Company's Chair of the Board.

11.     Individual Defendant Meredith J. Ching has served as a member of the Board since 2018.

12.     Individual Defendant Walter A. Dods, Jr. has served as a member of the Board since 2018.

13.     Individual Defendant John W. Eck has served as a member of the Board since 2014.

14.     Individual Defendant Leigh R. Fox has served as a member of the Board since 2018, and is the Company's President and Chief Executive Officer.

15.     Individual Defendant Jakki L. Haussler has served as a member of the Board since 2008.

16.     Individual Defendant Craig F. Maier has served as a member of the Board since 2008.

17.     Individual Defendant Russel P. Mayer has served as a member of the Board since 2013.

18.     Individual Defendant Theodore H. Torbeck has served as a member of the Board since 2013.

19.     Individual Defendant Martin J. Yudkovitz has served as a member of the Board since 2015.

20.     Defendant Cincinnati Bell is incorporated in Delaware and maintains its principal offices at 221 East Fourth Street, Cincinnati, OH 45202.  The Company's common stock trades on the New York Stock Exchange under the symbol "CBB."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

23.     Cincinnati    Bell,    together    with    its    subsidiaries,    provides    diversified telecommunications and technology services to residential and business customers in the United States. It operates in two segments, Entertainment and Communications, and IT Services and Hardware. The Entertainment and Communications segment offers data services, including high-speed Internet access, data transport, and interconnection services, as well as metro-Ethernet products; and voice local services, as well as long distance, digital trunking, switched access, and other value-added services, such as caller identification, voicemail, call waiting, and call return.

5

This segment also provides video services comprising entertainment channels, including digital music, local, movie, and sports programming with high-definition (HD) channels, parental controls, HD DVR, and video on-demand. In addition, this segment undertakes wiring projects for business customers; and offers advertising, directory assistance, maintenance, and information services. The IT Services and Hardware segment provides consulting services consisting of IT staffing and project-based engagements, including engineering and installation of voice, connectivity and IT technologies, development of digital application solutions, and staff augmentation; and hosted solutions comprising converged IP communications platforms of data, voice, video, and mobility applications. This segment also offers cloud services, such as virtual data center, storage, and backup services; and monitoring and managing technology environments and applications, as well as sells, architects, and installs telecommunications and IT infrastructure equipment. The Company was founded in 1873 and is headquartered in Cincinnati, Ohio.

24.     On December 23, 2019, Cincinnati Bell announced the Proposed Transaction:

> CINCINNATI, Dec. 23, 2019 /PRNewswire/ -- Cincinnati Bell Inc. (NYSE:CBB), together with Brookfield Infrastructure (NYSE: BIP; TSX: BIP.UN), today announced an agreement through which Brookfield Infrastructure and its institutional partners will acquire Cincinnati Bell in a transaction valued at approximately $2.6 billion, including debt (the "Transaction").
>
> Pursuant to the agreement, each issued and outstanding share of Cincinnati Bell common stock will be converted into the right to receive $10.50 in cash at closing of the Transaction. The Transaction price of $10.50 per share of Cincinnati Bell common stock represents a 36% premium to the closing per share price of $7.72 on December 20, 2019 and an 84% premium to the 60-day volume weighted average price. The Transaction has received unanimous approval of Cincinnati Bell's Board of Directors and is subject to customary closing conditions, including Cincinnati Bell shareholder approval and regulatory approval.

Lynn A. Wentworth, Chairman of the Cincinnati Bell Board of Directors, said, "After thoroughly reviewing a range of strategic alternatives and possible business opportunities for maximizing value, the Board determined this transaction was in the best interest of the company, its shareholders, and its customers. The transaction provides clear and immediate value at an attractive premium and represents an exciting new chapter for Cincinnati Bell."

Leigh Fox, President and Chief Executive Officer of Cincinnati Bell, continued, "The transaction strengthens our financial position, enabling accelerated investment in our strategic products that is not presently available to Cincinnati Bell as a standalone company. This will allow us to drive growth and maximize value over the long term to the benefit of all our stakeholders. With Brookfield Infrastructure's support, we will be better positioned to deliver next generation, integrated communications for our customers through an expanded fiber network. Brookfield Infrastructure provides strong industry expertise with a proven track record of investment in critical data service and infrastructure. The financial, management, and other resources made available to Cincinnati Bell through the acquisition will enhance our networks and services to the benefit of our customers in Hawaii, Ohio, Kentucky, and Indiana, and across the nation."

"This investment represents an opportunity for Brookfield Infrastructure to acquire a great franchise and leading fiber network operator in North America," said Sam Pollock, Chief Executive Officer of Brookfield Infrastructure. "We are excited to leverage our operating expertise to work with the company's management team as it completes its industry-leading fiber optic rollout plan. Cincinnati Bell is a great addition to our data infrastructure portfolio and we expect it will contribute strong utility-like cash flows with predictable growth."

Cincinnati Bell owns and operates the leading data transmission and distribution network in Cincinnati, Ohio and Hawaii, with a footprint of over 1.3 million homes, delivering core fiber broadband, video and voice services to residential and enterprise customers. The business is undergoing an industry-leading transformation to upgrade its network to next generation fiber, which will be critical to support the growing demand for data and the advent of 5G. Thus far, Cincinnati Bell has future-proofed 50% of its network, representing more than 17,000 miles of dense metro and last-mile fiber and has plans to further upgrade its network over the next few years. The ongoing fiber upgrade allows

Cincinnati Bell to provide utility-like services for broadband and data, generating stable and growing cash flows.

Brookfield Infrastructure is a leading global company with a long-standing history as an owner and operator of high-quality infrastructure assets. It has a global portfolio of assets in the utilities, transport, energy and data infrastructure sectors across North and South America, Asia Pacific and Europe.

The Transaction is expected to close by the end of 2020. It is subject to certain customary closing conditions, including the approval by Cincinnati Bell's shareholders, expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and certain regulatory approvals. Cincinnati Bell will file a current report on Form 8-K with the U.S. Securities and Exchange Commission containing a summary of the terms and conditions of the proposed acquisition as well as a copy of the merger agreement.

**Advisors**

White & Case LLP is serving as lead legal advisor to Brookfield Infrastructure on this Transaction. Financing will be led by a syndicate of banks including Bank of America, BMO Capital Markets Corp., Citigroup Global Markets Inc., TD Securities and Wells Fargo Securities, LLC.

Morgan Stanley & Co. LLC and Moelis & Company LLC are acting as financial advisors and Cravath, Swaine & Moore LLP, Morgan, Lewis & Blockius LLP, and BosseLaw PLLC are acting as legal advisors to Cincinnati Bell.

\* \* \*

25.     The Board is recommending to the Company's shareholders to vote in favor of the Proposed Transaction. It is therefore imperative that Cincinnati Bell's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**   <u>**The Materially Incomplete and Misleading Proxy Statement**</u>

26.   On February 4, 2020, Cincinnati Bell filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Cincinnati Bell Financial Projections*

27.   The Proxy Statement fails to provide material information concerning financial projections by Cincinnati Bell management and relied upon the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cincinnati Bell management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is

replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the September and December Forecasts, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2023: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 52-53.

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or

other non-discretionary expenditures that are not deducted from the measure.[1]

31.       Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.       With respect to Morgan Stanley's *Discounted Future Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the range of AV/EBITDA Ratios that was applied; (ii) the inputs and assumptions underlying the range of discount rates ranging from 11.7% to 12.9%, and (iii) the Company's future amount of net debt and preferred equity. Proxy Statement at 57.

33.       With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to arrive at the estimated unlevered free cash flows; (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.4% to 7.8%, and (iii) the inputs and assumptions underlying the selection of the range of exit multiples from 5.5x to 6.25x. Proxy Statement at 58.

34.       With respect to Moelis' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to arrive at the estimated future after-tax free cash flows; (ii) the inputs and assumptions underlying the range of discount rates ranging from 8.00% to 9.25%, and (iii) the inputs and assumptions underlying the selection of the range estimated terminal values from 5.75x to 6.50x. Proxy Statement at 64.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared the financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Cincinnati Bell within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Cincinnati Bell, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cincinnati Bell, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cincinnati Bell, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

14

Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

15

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 13, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   */s/ Gloria Kui Melwani*
     Gloria Kui Melwani
     270 Madison Avenue
     New York, NY 10016
     Telephone: (212) 545-4600
     Facsimile: (212) 686-0114
     Email: melwani@whafh.com

     *Attorneys for Plaintiff*